701 S.E.2d 1 (2010)
In the Matter of D.J.E.L.
No. COA10-685.
Court of Appeals of North Carolina.
November 16, 2010.
Mercedes O. Chut, Greensboro, for Guilford County Department of Social Services, appellee.
Smith, James, Rowlett & Cohen, L.L.P., by Margaret Rowlett, Greensboro, for appellee guardian ad litem.
Richard Croutharmel, for respondent-mother.
STROUD, Judge.
Respondent-mother appeals from an order terminating her parental rights to Donnie.[1] For the following reasons, we affirm.

I. Background
On or about 16 April 2008, the trial court filed an order determining Donnie was a neglected and dependent juvenile. On or about 8 April 2010, the trial court terminated respondent-mother's parental rights based on the following findings of fact: When Donnie first came into the custody of the Guilford County Department of Social Services ("DSS") respondent-mother claimed that Donnie, then age six, "had tried [to] kill her with his spirit by causing a car in oncoming traffic to swerve into her lane" of travel. Respondent-mother also accused Donnie of "trying to poison her" and "speaking to her telepathically[,] ... calling her names via his *2 mind to hers." Respondent-mother's accusations caused Donnie emotional problems. Respondent-mother had a history of violent relationships and previously had her parental rights terminated to another child. The trial court concluded that three grounds existed to terminate respondent-mother's parental rights: (1) neglect pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2) dependency pursuant to N.C. Gen.Stat. § 7B-1111(a)(6), and (3) respondent-mother's "parental rights ... with respect to another child have been terminated... and she lacks the ability or willingness to establish a safe home" pursuant to N.C. Gen.Stat. § 7B-1111(a)(9). The trial court also concluded that it was in the best interest of Donnie that respondent-mother's parental rights be terminated. The trial court accordingly ordered termination of respondent-mother's parental rights to Donnie. Respondent-mother appeals.

II. Standard of Review
A termination of parental rights proceeding consists of two phases. In the adjudicatory stage, the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen.Stat. § 7B-1111 exists. We review whether the trial court's findings of fact are supported by clear and convincing evidence and whether the findings of fact support the conclusions of law.
If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child. The court is required to issue an order terminating the parental rights unless it finds that the best interests of the child indicate that the family should not be dissolved. While there is no requirement at this dispositional stage for the court to make findings of fact upon the issuance of an order to terminate parental rights, such findings and conclusions must be made upon any determination that the best interests of the child require that rights not be terminated. We review the trial court's decision to terminate parental rights for abuse of discretion.
In re Anderson, 151 N.C.App. 94, 97-98, 564 S.E.2d 599, 602 (2002) (citation and quotation marks omitted).

III. N.C. Gen.Stat. § 7B-1111(a)(9)
Respondent-mother contends the trial court erred by concluding that any grounds existed for termination of her parental rights. Respondent-mother argues that her parental rights should not have been terminated pursuant to N.C. Gen.Stat. § 7B-1111(a)(9) which provides that "[t]he court may terminate the parental rights upon a finding [that] ... [t]he parental rights of the parent with respect to another child of the parent have been terminated involuntarily by a court of competent jurisdiction and the parent lacks the ability or willingness to establish a safe home." N.C. Gen.Stat. § 7B-1111(a)(9) (2009) (emphasis added).
"The scope of review on appeal is limited to issues so presented in the several briefs. Issues not presented and discussed in a party's brief are deemed abandoned." N.C.R.App. P. 28(a). Respondent-mother failed to challenge finding of fact 37 which provides that "[t]he mother's parental rights have been involuntarily terminated by a court of competent jurisdiction as to another child." Thus, the only issue before this Court is whether there was clear and convincing evidence presented to support the findings of fact upon which the trial court based its conclusion that respondent-mother "lacks the ability or willingness to establish a safe home." N.C. Gen.Stat. § 7B-1111(a)(9). The trial court made findings of fact regarding respondent-mother's history with domestic violence, and respondent-mother challenges these findings which include:
33. The mother has had a pattern of violent relationships ever since the child came into custody in spite of attending sessions designed to address issues of domestic violence.
34. The mother had a violent altercation with her step-father after the juvenile came into custody.
35. The mother also had a woman living with her who was violent and causing problems for some time before leaving the mother's residence.
*3 Respondent-mother claims that findings of fact 33 through 35 are not supported by competent evidence. However, respondent-mother herself testified:
Q. Okay. You also testified that you were having problems with D[onnie]'s father, C[arl?]
A. Yes.
Q. Okay. Did youdid you file assault charges against him?
A. Yes, because he, um, tried to stab me with a knife at one incident.
Q. Did you take out a 50B against him?
A. Yeah. I took outyear, I took out a 50B.
....
Q. ... Did you go to domestic violence classes?
A. Yes. I went to Crossroad classes.
....
Q. Now, regardingregarding the domestic violence program that you attended and you've already talked about, did you have a, a woman living with you in the past couple years that was violenthad a violence problem?
A. Not but one.
Q. Was there a woman living in your home?
A. You mean
Q. Have you had any female roommates since D[onnie] came into custody?
A. Yeah.
Q. And was there one that with whom violence was a problem that you had to finally get rid of because of that?
A. Yeah. Yeah. I had to get rid of her because she was tripping.
Q. Okay. And did you have any kind of violent altercation with your stepfather in the last couple of years?
A. Yeah. My stepdad and my mom's second husband, yeah.
Q. Okay. Did you have a 50B out of [sic] C[arl] back when D[onnie] was born?
A. Yes.
Q. And you returnedbut you got back together with him after that?
A. Yes.
Furthermore, respondent-mother's therapist, Mr. Robert Goodman, testified that respondent-mother has "consistently been in domestic violence situations. She's been in situations where II call her judgment into question about who she has living with her. And my concern is really for D[onnie] that somethingsomething really bad at some point would happen to D[onnie.]" Mr. Goodman was specifically asked, "So, do you think [respondent-mother] has the ability to establish a safe home for D[onnie]?" to which he responded, "II don't believe she does, no, notnot in my opinion." Also, Ms. Sandra Hurley, a foster care social worker with DSS, testified that she was not certain Donnie would be safe if respondent-mother was not on her medication and that respondent-mother "has a history of inviting people to stay in her home that often have problems and she has a history of getting into physical altercations with people in the home or relatives." We thus conclude that there was clear and convincing evidence to support the trial court's findings of fact 33 through 35 regarding domestic violence. We further conclude that findings of fact 33 through 35 and 37 support the trial court's conclusion of law that respondent-mother's parental rights could be terminated pursuant to N.C. Gen. Stat. § 7B-1111(a)(9). See In re R.P.C., 185 N.C.App. 159, 647 S.E.2d 688 (2007) (unpublished). This argument is overruled.
Respondent has raised arguments as to the other grounds for termination of her parental rights found by the trial court; however, because only one of the grounds for termination under N.C. Gen.Stat. § 7B-1111 is needed to support the order for termination of parental rights, we need not consider any arguments related to other grounds found by the trial court. See In re P.L.P., 173 N.C.App. 1, 8, 618 S.E.2d 241, 246 (2005) (citation omitted), aff'd per curiam, 360 N.C. 360, 625 S.E.2d 779 (2006).

IV. Best Interest
Respondent-mother also contends that the trial court abused its discretion in terminating her parental rights, particularly by inappropriately relying on the testimony of Donnie's therapist, Ms. Heather Mask. *4 However, "it is th[e] judge's duty to weigh and consider all competent evidence, and pass upon the credibility of the witnesses, the weight to be given their testimony and the reasonable inferences to be drawn therefrom." In re Whisnant, 71 N.C.App. 439, 441, 322 S.E.2d 434, 435 (1984).
(a) After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest. In making this determination, the court shall consider the following:
(1) The age of the juvenile.
(2) The likelihood of adoption of the juvenile.
(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.
(4) The bond between the juvenile and the parent.
(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.
(6) Any relevant consideration.
N.C. Gen.Stat. § 7B-1110(a) (2009).
Here, the trial court found that Donnie was eight years old; adoption was very likely as he was living with a foster family that wanted to adopt him as soon as legally possible; termination of parental rights would accomplish the permanent plan of adoption; although Donnie had a bond with respondent-mother, he had indicated to his therapist that he did not wish to return to respondent-mother's custody; and Donnie had bonded with his current foster family, which had been meeting his needs and providing the love and support expected of a family. We conclude that the trial court did not abuse its discretion in determining it was in the best interest of Donnie that respondent-mother's parental rights be terminated. This argument is overruled.

V. Conclusion
We affirm the trial court's order terminating respondent's parental rights.
AFFIRMED.
Judges HUNTER, ROBERT C. and HUNTER, JR., ROBERT N. concur.
NOTES
[1] A pseudonym will be used to protect the identity of the child.